THOMAS M. DARRINGTON v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

July 14, 1916.

Nos. 19,322—(26).

**Contributory negligence — wilful negligence.**

Plaintiff's intestate was killed by a train of defendant while on a railroad bridge spanning a river. It is *held*:

(1) Plaintiff's intestate was guilty of contributory negligence as a matter of law in using the bridge as a passageway under the circumstances disclosed by the evidence.

(2) There was no evidence to take the case to the jury on the issue of wilful negligence.

[1] Reported in 158 N. W. 727.

Action in the district court for Steele county by the administrator of the estate of Patrick Darrington, deceased, to recover $2,990 for the death of his intestate. The case was tried before Childress, J., who denied defendant's motion to dismiss the action, and a jury which returned a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant appealed. Reversed.

*Brown, Abbott & Somsen,* for appellant.

*F. A. Alexander* and *Moonan & Moonan,* for respondent.

BUNN, J.

Defendant's railway track runs east and west through the city of Owatonna, and crosses Straight river on an iron bridge that is about 25 feet above the water. The bridge is 178 feet in length, and but wide enough to accommodate a single track. The approaches to the bridge are embankments of earth about 14 feet in width. These embankments extend for a long distance east and west from the ends of the bridge. Oak street runs parallel with the river and 237 feet east of the east end of the bridge. There is a subway under the embankment at Oak street. From this subway west to the bridge the embankment is from 12 to 20 feet high. West of the bridge the Rock Island tracks run parallel with the river and in a subway cut through the embankment. Riverside street is west of the Rock Island tracks, and also runs under the embankment. From a point 2,840 feet west of the bridge the track runs absolutely straight, and there is a heavy down grade until the bridge is reached. Defendant's right of way is fenced from Oak street west across the bridge to State street, which is the next street west of Riverside avenue.

At about two o'clock in the afternoon of August 3, 1911, Patrick Darrington, age 68, was standing upon the Straight river bridge leaning against its north railing. A passenger train came from the west at a speed of 40 miles an hour. Darrington tried to escape it by running towards the east, but was overtaken and killed. This action is by his personal representative, to recover for his death. The case was tried and submitted to the jury, on the theory that the evidence was sufficient to warrant a finding that Darrington was not a trespasser, that defendant owed him the duty to use reasonable care and had failed in that duty. The verdict was for the defendant. Holding that it erred in an instruc-

tion, the trial court granted plaintiff's motion for a new trial, and defendant appeals.

Plaintiff attempted to prove and perhaps succeeded in making the question one for the jury, that defendant had invited the public to use this embankment and the bridge as a passageway. The error for which the new trial was granted was in telling the jury that plaintiff could not recover, unless Darrington was in the habit of using the right of way as a path. We agree that this was error, and we would not disturb the decision of the trial court that it may have influenced the verdict, were we not satisfied from the evidence that defendant was entitled to a verdict as a matter of law.

We do not decide that the proof was insufficient to show an implied invitation to use the embankment and bridge as a passageway. It is likely that this question was for the jury under our decisions, though it should require very persuasive proof to establish the proposition that defendant intended to extend such an invitation in a case like this, where there was no safety in using either the embankment or the bridge if a train came along. As we understand the situation, there was no room for trains and pedestrians at the same time, and undoubtedly the embankment and bridge were intended for trains, not for public use as a passageway. But defendant had posted no warning signs, steps leading from Oak street to the tracks had been cut in the embankment, and, while this was done by an employee for the use of employees, the evidence is that many people used the steps to reach the embankment' and traveled along this and across the bridge. We will assume, without so deciding, that Darrington was not a trespasser.

We will also assume that defendant was negligent in one or more of the respects claimed: The speed of the train; the failure to give signals; the failure to keep a lookout for people who might be on the right of way pursuant to the implied invitation.

Our opinion is that Darrington was guilty of contributory negligence as a matter of law. The evidence is clear that there was no occasion for him to use the embankemnt and bridge as a passageway to his home. It was not the direct or most convenient way. He had gone from his home

to post a letter, and, in returning, was seen to go up the steps at Oak street onto the embankment. He is next seen about the middle of the bridge. That this was a position of danger is not open to doubt.

Darrington had lived in Owatonna, in the vicinity of the bridge for many years, and undoubtedly knew the situation as well as anybody. Trains crossed the bridge frequently, and switching operations often brought cars upon the east end. The space between the railings of the bridge and the side of an ordinary freight car was something like two feet and a half, enough so that a man could cling to the railing and avoid being struck by a passing train, but not enough to make the bridge anything but a very dangerous place for pedestrians attempting to cross it. The evidence is not entirely clear as to what Darrington was doing when he discovered the train bearing down upon him. It had been but a few moments since he was seen on the embankment, and the evidence of the fireman that he was seen about the center of the bridge, leaning against the north railing looking into the water, is not persuasive that he was then oblivious of the danger. He may have been attempting to get out of the way. Had he retained his position, it seems fairly clear that the train would have passed without hitting him. It is fair to assume either that he decided that he would be struck if he remained where he was, and could beat the train across the bridge, or that the emergency caused him to lose his head. In any event, he ran ahead of the approaching train, but was overtaken before he reached the east end of the bridge. In view of the emergency that confronted Darrington, and the strong presumption that he used due care, we would not be inclined to say that his conduct after seeing his danger was contributory negligence as a matter of law. But when a man of mature years, in possession of all his faculties, attempts to cross a railroad bridge like this, where he knows there is no room for a train and pedestrians at the same time, and that trains are likely to come at any time, it should be held that he takes his chances. Notwithstanding the implied invitation, we are unable to see that there was any assurance of safety. On the contrary, reasonable minds can hardly differ on the proposition that the attempt was dangerous. An effort is made to excuse Darrington because the train was 10 to 15 minutes late, the thought being that he supposed it had come in before he started to cross the bridge. But this does not excuse him. As before

134 M—3

pointed out, there was no necessity for his using the bridge, it was not the most convenient way to his home. Trains are often a few minutes or more behind their scheduled time. Darrington was bound to know this, and was not entitled to rely upon an unwarranted belief that the train had already crossed the bridge and pulled into the station. We will not encumber this opinion with the citation of authorities in point. They are readily accessible. We hold that the presumption that deceased exercised due care, strong as it is, is so conclusively rebutted by the evidence and the undisputed physical facts that honest and fair-minded men could not draw a different conclusion. The verdict of the jury in defendant's favor adds strength to this view.

It is claimed that there was evidence of wilful negligence, that is, evidence from which the jury might find the engineer guilty of a reckless disregard of the safety of Darrington, by failing, after discovering his peril, to exercise ordinary care to prevent the impending injury. The trial court held, and we think correctly, that there was no evidence to take the case to the jury on this issue. We are not able to see anything that the engineer could have done that he did not do to avoid the accident, after he discovered Darrington's danger. Plaintiff cites Havel v. Minneapolis & St. L. R. Co. 120 Minn. 195, 139 N. W. 137, to the point that the engineer's testimony as to the time he first saw Darrington is not conclusive. This is true, but there are no circumstances in evidence in this case that furnish a reasonable basis for concluding that the testimony was false.

Our conclusion is that plaintiff did not make a case for the jury, and therefore was not prejudiced by any error in the court's instructions. The order granting a new trial is therefore reversed, and the verdict of the jury reinstated.