# MAT GREISCH v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

June 27, 1924.

. No. 23,949.

**Engineer's duty to sectionmen on track in respect to signals and speed of train.**

1. Reasonable care in the management of trains which must make time between stations does not require the engineer to check the speed of the train whenever he sees sectionmen at work on or near the track. If he gives the usual and proper signals to warn them of the approach of the train, he may act on the assumption that they can hear and see and will heed the signals and get off the track in time to escape injury. Not until it appears probable that they are not going to get off, does it become his duty to use all the means in his power to stop the train. Negligence in any particular on the part of defendant's engineer cannot be predicated upon the facts and circumstances mentioned in the opinion, and the issue with respect thereto should not have been submitted to the jury.

**Question for jury whether section foreman was negligent.**

2. The evidence was sufficient to raise a question for the jury with respect to negligence of the section foreman in failing to keep a proper lookout for trains and in not warning his men of the approach of a train. It fell short of showing a wilful disregard of the safety of his men on the part of the foreman.

**Assumption of risk.**

3. The evidence did not establish the defense of assumption of risk as a matter of law.

**Questions for jury.**

4. Whether a sectionman was negligent and whether his negligence, if any, was the proximate cause of his death, were questions for the jury.

Action in the district court for Pope county by the administrator of the estate of Stanley Bambura, deceased, to recover $50,000.

[1]Reported in 199 N. W. 517.

The case was tried before Flaherty, J., who when plaintiff rested and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $13,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*E. M. Webster* and *John E. Palmer*, for appellant.

*Tom Davis, Ernest A. Michel, E. S. Cary, Henry T. Ronning* and *James B. Ormond*, for respondent.

LEES, C.

Action to recover for the death of Stanley Bambura, a section hand employed by defendant at Thorpe, Wisconsin. Plaintiff obtained a verdict and this appeal is from an order denying defendant's blended motion for judgment or a new trial.

About 8:30 o'clock in the morning of January 22, 1921, the deceased, his foreman and another section hand, all experienced sectionmen, were out on defendant's main line at Thorpe with a handcar propelled by a gasolene motor. They stopped at a switch about 2,200 feet west of the depot to unload some rail braces, the foreman remaining on the car. One of defendant's fast passenger trains, coming from the east, struck the car and killed the two sectionmen. They had finished unloading the rail braces and were pushing the car to get it under way. The foreman, as well as his men, was facing the west as the train came up behind them. The foreman noticed it in time to escape. Either his men did not know of its approach or they stayed on the track too long.

The deceased was employed and the railway company was engaged in interstate commerce at the time, and both were within the provisions of the Federal Employers Liability Act.

The complaint alleged that the train was running at an excessive rate of speed; that Bambura was not warned of its approach; and that the engineer wilfully, recklessly and wantonly ran the locomotive against him after discovering and knowing that he was in a position of danger and oblivious of the approach of the train.

The engineer testified that the locomotive was equipped with an automatic bell ringer and that the bell was ringing; that he blew

the whistle for the station a mile east of the depot; that when within 1,500 feet of the depot he gave the usual crossing signal of two long and two short blasts for a crossing east of the depot; that it took about nine seconds to complete the giving of such a signal; that he repeated it for a crossing 50 or 100 feet west of the depot; that immediately after going over that crossing he saw the sectionmen and repeated the crossing signal, which was the usual signal to warn sectionmen; that the crossing was about 2,000 feet from the place of the accident (it was 1,700 feet by actual measurement); that when he was 300 or 400 feet from the men he saw that they were not moving off the track and began to give the danger signal—a series of short, sharp blasts; that the foreman turned and looked in the direction of the train, got off the track and apparently tried to pull one of the men with him, and then ran, waving his hands; that he did not see the gas car until the foreman got off the track; that it was hard to see it because of the dark background and the men between him and the car; that he was within 300 feet of it when he first saw it and immediately applied the brakes in emergency, turned on the sand, and continued to give the danger signal, but could not stop before the car and the men were struck, and that the train ran about 900 feet after the brakes were applied before it stopped. The train was four hours late and was running at a speed of 50 miles an hour. Its ordinary speed was 40 miles an hour. It gained speed after passing the depot because of a downgrade to the place of the accident, and was making about 53 miles an hour when the brakes were applied.

The following instruction was given to the jury:

"If the defendant's locomotive engineer who was in control of and running the engine attached to the train actually saw Bambura and the other two section hands upon the railroad track in a place of peril and apparently unaware and oblivious of the approaching train, and if such engineer by the exercise of reasonable care and the use of the means and appliances under his control could have given warning to decedent and stopped, or reduced the speed of the engine so as to have avoided injury to the decedent, and he did not

do so, and if his failure to do so proximately caused or contributed to the death of Bambura, then the engineer would be guilty of wilful negligence and plaintiff would be entitled to recover."

1. A careful examination of the record has satisfied us that a finding that timely and proper signals were not given by the engineer to warn the men of the approach of the train could not be sustained.

We turn now to a consideration of the charge of negligence based on the engineer's failure to stop his train or check its speed sooner than he did. Upon reason and authority, it is generally held that in the management of his train an engineer may act on the assumption that sectionmen on the track can see and hear and will heed warning signals and get off the track in time to escape injury. Not until it appears probable that they are not going to get off, is the engineer under any duty to stop. As soon as that becomes apparent, it is his duty to use all the means in his power to stop the train. In each case something depends on the situation and circumstances. Reasonable care in the operation of trains which must make time between stations, does not require an engineer to check the speed of his train whenever he sees men on the track. If he gives the usual and proper signals to warn them of the approach of the train, he may act in the belief, justified by observation and experience, that they will obey the instinct of self-preservation by which mankind in general is governed and get out of the way of the train. Any other rule, if enforced, would seriously interfere with the speedy transportation by rail upon which the public has a right to insist. These views are sanctioned by our own decisions as well as by those in other jurisdictions. Erickson v. St. Paul & D. R. Co. 43 Minn. 500, 43 N. W. 332, 5 L. R. A. 786; Johnson v. Truesdale, 46 Minn. 345, 48 N. W. 1136; O'Brien v. Erie R. Co. 210 N. Y. 96, 103 N. E. 895; Holmes v. Detroit G. H. & M. Ry. Co. 171 Mich. 633, 137 N. W. 540; 3 Elliott, Railroads, pp. 492, 858.

The gas car was about 6 feet long and 5 feet wide. The platform was about 1⅓ feet above the rails. A seat box, covering the motor, was attached lengthwise to the platform. It was about 2 feet wide

and 1½ feet high and was painted red. It is argued that the jury might properly find that the engineer would have seen the gas car before he says he saw it, if he had been keeping a proper lookout, and could have checked the speed of the train or stopped before it was too late for the men to get the car off the track, and that he was negligent in this respect. Havel v. Minneapolis & St. L. R. Co. 120 Minn. 195, 139 N. W. 137, cited by plaintiff is not in point. There, the engineer testified that it was dark, that he did not see two men walking on the track and did not know he had struck them until the accident was reported. Here, the engineer saw the men and their car and seemingly did everything within reason to avert the accident. He was plaintiff's witness, although employed by defendant at the time of the trial. There is nothing improbable or unreasonable about his testimony. It is not contradicted by the other testimony or by the physical facts. The jury were not at liberty to conclude that it was false. The case is unlike Kommerstad v. Great North. Ry. Co. 128 Minn. 505, 151 N. W. 177, and Olthoff v. Great North. Ry. Co. 135 Minn. 72, 160 N. W. 206. In some respects it resembles May v. Chicago, M. & St. P. Ry. Co. 147 Minn. 310, 180 N. W. 218.

Considering the evidence as a whole, together with all rational inferences that may be drawn from it, there is no room for the ultimate conclusion that the engineer failed in any respect to discharge his full duty to the sectionmen. We conclude that the submission of the issue as to the engineer's alleged negligence under the instruction we have quoted was error and that there must be a reversal for that reason.

2. The complaint charged negligence in that the section foreman failed to keep a proper lookout for trains and failed to warn the deceased of the approach of the train in question. Plaintiff introduced in evidence a rule reading as follows:

"The section men are to stop working when an approaching train is within a reasonable distance and the foreman must immediately go with his men to one side of the track beyond danger of being struck by the cars or anything projecting from them."

And another rule which reads:

"When riding on hand cars at least one man must face each direction."

The foreman testified that it was part of his duty to keep a lookout for trains and when he saw a train approaching to warn his men to get out of the way, and that he performed both duties on the occasion in question. Manifestly the second rule was not observed and we fail to discover any testimony except the foreman's to substantiate the claim that he was watching for trains. To explain his conduct, the foreman testified that Bambura saw the train and called out that it was coming when it was so far away that all the men had time enough to get off the track. The explanation is inconsistent with the foreman's conduct and with the conduct of his men. It does not square with the testimony of the engineer or with that of an eye witness of the accident. Its credibility is doubtful to say the least. It was not and could not be disputed, but nevertheless we think that upon this issue the case was one for the jury.

A wilful disregard of the safety of his men on the part of the foreman was not shown. He was guilty of negligence in the ordinary sense, if he was negligent at all.

3. Assumption of risk was pleaded as a defense. It is enough to say that upon this record it cannot be held as a matter of law that the deceased assumed the risk of his foreman's failure to perform his duty to keep a lookout for trains and give timely warning.

4. Contributory negligence is in the case and should be submitted in accordance with the provisions of the liability act. If the deceased was negligent, whether his negligence was the sole proximate cause of his death is also a question for the jury.

These observations are based entirely upon the present record and are made in view of a second trial. Their applicability will depend on the facts developed when the case is tried again. The views expressed eliminate a number of questions discussed in the briefs and hence they are not mentioned.

Defendant's motion for a directed verdict was properly denied, but, because of the error heretofore pointed out, there must be a new trial.

The order denying a new trial is reversed and a new trial is granted.