## LOUISE M. ASKLUND v. CHICAGO GREAT WESTERN RAILROAD COMPANY AND ANOTHER.[1]

January 11, 1929.

No. 27,032.

See 22 R. C. L. 991; 4 R. C. L. Supp. 1482.

[1]Reported in 223 N. W. 95.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Edwin B. Baer,* for appellants.

*David Johnson* and *Willard Converse,* for respondent.

TAYLOR, C.

Plaintiff, as special administratrix of the estate of her deceased husband, Carl Asklund, recovered a verdict on the ground that his death was caused by the wrongful act of defendants. Defendants appealed from an order denying their motion in the alternative for judgment notwithstanding the verdict or for a new trial.

The track of defendant railway company runs in a northerly direction from the village of Hampton in Dakota county. A winding country road running in an easterly and westerly direction crosses the track at a right angle about one and one-half miles north of the village. The road comes to the track from the east at a moderate down grade and goes from the track to the west at quite a steep down grade. About half past three o'clock in the afternoon of June 7, 1927, Carl Asklund, while sitting in his Ford sedan on this crossing, was struck and killed by a passenger train of defendant railway company driven by defendant Snavley as engineer. Aaron Kaufman's farm buildings are located about 60 rods northwest of the crossing. He and his wife were on ladders painting a granary. They saw a Ford sedan coming from the east, drive upon the crossing and stop. It contained only one person and remained on the track with the driver sitting in the seat for 10 or 15 minutes before the train reached the crossing. They saw the train coming from the south some distance beyond the whistling post and heard the whistle for the crossing at the whistling post and additional sharp blasts of the whistle as the train came to the crossing. A witness who was working in Kaufman's field also states

that the car was standing on the track before the train whistled for the crossing and that it remained motionless until the collision. Mrs. Kaufman also states that about an hour before the accident she saw a Ford sedan with a single occupant drive upon the crossing in the same manner and stop.

This case differs from many crossing cases in that there is practically no dispute as to the facts shown by the evidence, except as to the distance within which the train could have been brought to a stop. No explanation is given of the strange conduct of the deceased in driving upon the track and remaining there apparently motionless for at least ten minutes before the collision. If his engine had stalled, the car could have been pushed off the track down the comparatively steep grade. The engineer saw him sitting upright at the wheel as the train came to the crossing, and the Kaufmans say that he sat there during all the time the car was on the track.

Plaintiff predicates her right to recover on the claim of wilful and wanton negligence. She charges that the engineer, after discovering that the deceased was in a position of peril, in reckless disregard of his safety, failed to exercise ordinary care to avoid injuring him. The important question presented is whether the evidence will justify a finding that the engineer was guilty of such negligence.

The train was running from Oelwein, Iowa, to St. Paul, and made no stop at Hampton. Beginning at a considerable distance beyond the whistling post, the track runs straight in a northwesterly direction until within 800 or 850 feet of the crossing where it curves to the right or east, the curve continuing until within 200 or 300 feet of the crossing. Both parties placed an automobile on the crossing and then took photographs at various distances from it. Defendant's photographs were taken from the cab window of the same locomotive which drew the train. Plaintiff's photographs were taken with the camera at about the same height above the track. There is no material difference in the two sets of photographs. They show that the engineer could see the body of the automobile when 960 feet from the crossing; but they also show that owing to

the curve, the lay of the ground and the intervening vegetation, he could not see that the automobile was in fact on the track until within about 400 feet of it. The train was running at its usual speed of 45 to 50 miles an hour. On reaching the curve the engineer made a customary service application of the air to steady the train around the curve and avoid shaking up the passengers. When he came around the curve far enough to see that the automobile was on the track, he shut off the throttle and made an emergency application of the brakes; but the service application had reduced the air pressure, and the train, on a slight down grade, went some 1,200 feet beyond the crossing before it came to a stop. He saw the top of the automobile just before he made the service application of the brakes but did not know it was on the track. Plaintiff argues that the jury could find that he knew that the automobile was on or dangerously near the track and could have stopped his train before reaching the crossing if he had then made an emergency application of the air instead of a service application, and that he should have done so.

Wilful and wanton negligence cannot be predicated on such a state of facts. As said in Greisch v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 83, 86, 199 N. W. 517:

"Reasonable care in the operation of trains which must make time between stations, does not require an engineer to check the speed of his train whenever he sees men on the track. If he gives the usual and proper signals to warn them of the approach of the train, he may act in the belief, justified by observation and experience, that they will obey the instinct of self-preservation by which mankind in general is governed and get out of the way of the train. Any other rule, if enforced, would seriously interfere with the speedy transportation by rail upon which the public has a right to insist. These views are sanctioned by our own decisions as well as by those in other jurisdictions."

The train had the right of way, the usual signals to warn travelers of its approach were duly given, and the engineer had the right to assume that anyone on or dangerously near the track would get out

of the way in time to avoid injury. A train cannot make the time expected and demanded by the public if it slows down whenever a vehicle is seen at or approaching a crossing. It is the duty of the driver of the vehicle to yield the right of way and to take such precautions as, under the circumstances, may be reasonably necessary to avoid a collision. Not until it becomes apparent to the engineer that a collision is imminent is he required to stop his train. Greisch v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 83, 199 N. W. 517; Johnson v. Truesdale, 46 Minn. 345, 48 N. W. 1136; Lando v. C. St. P. M. & O. Ry. Co. 81 Minn. 279, 83 N. W. 1089; Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123, 14 L.R.A.(N.S.) 886; Darrington v. C. & N. W. Ry. Co. 134 Minn. 30, 158 N. W. 727; Willett v. C. M. & St. P. Ry. Co. 139 Minn. 288, 166 N. W. 342; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856; Hinkle v. M. A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377.

Plaintiff called two witnesses who were permitted to testify as experts as to the distance in which the train could have been stopped. One who had not run as an engineer for about 20 years stated that in his opinion it could have been stopped in 500 or 600 feet. The other, who had run as an engineer for several years prior to 1925, stated that in his opinion the train could have been stopped "in a distance of around 600 feet." Both stated that in their opinion a train of heavy steel cars could be stopped easier and quicker than a train of light cars. Even this testimony does not make it appear that the train could have been stopped in time to avoid the collision after the engineer knew that the automobile was standing on the track. At 45 miles an hour the train was going 66 feet a second and would cover the distance to the crossing in less than eight seconds from the time that the engineer could first see that the automobile was in fact on the track. It does not appear that in that time he could have done anything more than he did do to avoid the collision.

The parties discuss whether the conduct of Mr. Asklund warrants the inference that he intended to commit suicide, but we have no occasion to consider that question.

The evidence as to what actually happened is clear and undisputed, and we find nothing which will justify a finding that the defendants were guilty of negligence of any sort, wanton or otherwise. It follows that the order must be reversed and judgment be rendered for defendants. It is so ordered.

