## JULIA GORGENSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 9, 1917.

No. 20,494.

**Judgment notwithstanding verdict — evidence of negligence insufficient.**

> In a personal injury suit the evidence is *held* insufficient to sustain a verdict for the plaintiff, and the trial court rightly granted judgment notwithstanding the verdict.

Action in the district court for Yellow Medicine county by the administratrix of the estate of William A. Gorgenson, deceased, to recover $50,000 for the death of her intestate. The answer alleged that the work in which decedent was engaged involved certain dangers which were incidental to his work as brakeman, that he appreciated and assumed the risks thereof, specifically the dangers connected with the backing up of the train which caused his injuries and death. The case was tried before Daly, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $10,250. Defendant's motion for judgment notwithstanding the verdict was granted. From a judgment in favor of defendant, plaintiff appealed. Affirmed.

*Tom Davis* and *Ernest A. Michel,* for appellant.
*M. L. Countryman* and *A. L. Janes,* for respondent.

PER CURIAM.

The plaintiff appeals from the judgment entered upon the order granting the defendant's motion for judgment notwithstanding after verdict in favor of the plaintiff in a personal injury suit.

[1]Reported in 164 N. W. 904.

The plaintiff's intestate William A. Gorgenson was the rear brakeman on a freight train of the defendant. The train reached Litchfield going west at 6:40 in the evening of April 16, 1916. It was cut in two, left on the main track and the engine started switching. It was the duty of Gorgenson to protect the rear of the train. This means that it was his duty to go back and warn approaching trains, using flags, torpedoes or fusees as occasion might require, and put a red light on the rear of the train. The rule required the placing of the red light at sunset, which at this time was 6:39, but in practice it was not unusual to exercise some discretion. The engine finished its switching at 7:50 and backed and coupled onto the rear part of the train. In doing this the standing cars were pushed back some 20 or 30 feet rather violently and deceased was run over and killed.

It is not affirmatively shown that Gorgenson did not go back to the east to warn oncoming trains nor does it affirmatively appear that he did. The fact is of importance only as it bears upon the question whether the trainmen should have supposed him to be at the rear of the train where he might be hurt by its movement. There is evidence that for some time, measured in minutes, just before the accident, he was at the rear of the train doing nothing in particular and that when the train backed, not being attentive to the situation, he was struck. There is the testimony of a witness, who reached him immediately after the accident, that "he said he was going to hang a light on the car and they backed up." This is the only evidence that Gorgenson was about to place the light. The red lantern which it was customary to use was in the caboose after the accident. While the evidence is slight we assume it to be sufficient, if believed, to show that the deceased was in the act of hanging a light when injured or preparing to do so.

The conductor gave the signal to back and the engine backed without sounding the whistle. The court submitted to the jury the question whether the trainmen should have known that the deceased might be at the rear of the train and in a place of danger so that it was negligent to back without giving him notice. In granting the motion for judgment notwithstanding the court expressed its views as follows: "From the evidence the court is of the opinion that the train crew were not charged with notice, nor could they, in the exercise of ordinary care, have had

any reason to believe that the deceased would be in such close proximity to the rear end of the train when the coupling was made that he would be injured by reason of making the coupling in the way in which it was made."

We are of a like opinion. The rear section of the train had been standing for one hour and ten minutes. For substantially all that time it had been dusk or dark. The attaching of the light was but a moment's work. It involved no difficulty nor was it attended with particular danger. Considering the length of the stop and the very short time required to place the light we are unable to see that the trainmen were wanting in ordinary care in not anticipating that the deceased might be placing the light and in a place of peril at the precise time when they caused the train to back. The case of Thompson v. Minneapolis & St. Louis R. Co. 133 Minn. 203, 158 N. W. 42, is so different in its facts that it is not illustrative.

Judgment affirmed.