FRANK WILLETT v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY AND ANOTHER.[1]

February 8, 1918.

No. 20,660.

**Evidence of wilful negligence.**

Evidence examined and *held* insufficient to show wilful negligence.

Action in the district court for Ramsey county by a minor, to recover $25,000 for injuries received while crossing defendant's bridge. The answer alleged the negligence of the minor. The case was tried before Michael, J., who denied defendant's motions for a directed verdict, and a jury which returned a verdict for $10,000. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*F. W. Root* and *Nelson J. Wilcox,* for appellants.

*Barton & Kay,* for respondent.

[1]Reported in 166 N. W. 342.

Bunn, J.

This case is before the court on the appeal of defendants from an order denying their motion in the alternative for judgment notwithstanding the verdict for plaintiff, or for a new trial.

Plaintiff, a young man 18 years of age, had attended a dance at La Crescent, Minnesota, on the evening of September 22, 1916. At about four o'clock in the morning of the twenty-third, while he was on his way to his home in North La Crosse, by the way of defendant railway company's bridges between River Junction on the Minnesota side of the Mississippi and North La Crosse on the Wisconsin side, he was struck by an engine coming from the west, hauling a freight train of some 13 cars.

There are four bridges between River Junction, or bridge switch on the Minnesota side of the river, and North La Crosse; they are from west to east as follows: A bridge over the west channel of the Mississippi, one over the east channel, one over French Slough, and one over the Black River. Defendant operates but a single track across these bridges. The bridges and trestles between them are not wide enough to accommodate a train and foot passengers at the same time. Warnings were posted conspicuously on the right of way. Over 50 trains a day crossed the bridges on this track. It is entirely clear that plaintiff's attempt to reach his home by the route he took was an extremely hazardous one. It is rightly conceded that he was a trespasser. But of course notwithstanding his negligence, and in spite of his being a trespasser, he may still have just ground for complaint, if the engineer failed to use due care to avoid running him down, after seeing him on the track ahead.

Plaintiff's right to recover was made by the trial court to depend entirely on whether the engineer, codefendant in this case, was guilty of so-called "wilful" negligence, and it is admitted that the verdict can be sustained on no theory other than that the evidence justified a finding that the engineer, after seeing plaintiff on the track ahead in a position of peril, failed to use ordinary care to avoid striking him. Defendants claim that there was no evidence which warranted the submission of this issue to the jury, or at least that the verdict is so against the weight of the evidence that it was error to refuse a new trial.

139 M.—19

The vital points in the inquiry to ascertain if there was evidence of wilful negligence are as to the distance of plaintiff from the engine at the time the engineer first saw him, and as to what the engineer did to, avoid the accident. The witnesses, whose testimony bear upon these points, are plaintiff, the engineer, the fireman and the head brakeman. Plaintiff testified that he was about the center of the bridge across French Slough when he heard an engine whistle behind him; that he looked back and saw the headlight of the engine just coming into view around a curve; that he waved his hat; that there was then a short blast of the engine whistle; that he then ran in an effort to escape; he was struck at the east end of the bridge; he testified that the headlight threw its rays on the track ahead so that he could see clearly a great distance to the east. French Slough bridge was 860 feet in length; the track runs straight to the west for some 300 feet beyond the bridge. If plaintiff's testimony is true and accurate, it is fairly clear that the engineer could have seen him on the track when the engine was some 730 feet away, had he been giving his undivided attention to looking at the track ahead.

The engineer testified that he first saw plaintiff when the engine was about in the middle of the bridge and plaintiff was 5 or 6 car lengths ahead, that he immediately blew the whistle and applied the brakes. His estimate of the distance within which his train could be stopped was about 8 car lengths or 320 feet. It did not in fact stop until the engine was some two car lengths beyond the place where plaintiff was struck, the east end of the bridge. In a statement given plaintiff's attorneys before the trial, the engineer said that he saw plaintiff running on the bridge when his engine was just about to the Minnesota side of the bridge. The witness explained this statement by saying that he meant the west end of the truss part of the bridge; the truss or superstructure was in the middle of the bridge, and was 160 feet long. The witness testified that, about as the engine rounded the curve and came onto the straight track, he shut off the steam and blew the whistle for the draw in Black river bridge, that the speed of the engine was from 25 to 30 miles an hour before the steam was shut off, and slightly diminished after. He was pressed as to whether he was looking ahead after coming onto the straight track, but was unable to remember.

there being various things that demanded his attention on the engine.

The fireman heard the short blasts of the whistle and the air applied, but was not in a position to see ahead.

The head brakeman testified that he heard the air applied for the emergency brakes, and the short blasts of the whistle, looked ahead and saw plaintiff 10 or 15 feet in front of the engine. In a statement given by this witness before the trial to a representative of the attorneys for plaintiff, he said: "When we came around the curve we saw the man on the track; we thought he would step off on the side of the bridge, and when the engineer saw that he was not, he whistled a lot of times and set the air, and was going about 35 miles an hour and was unable to stop in time."

Plaintiff claims that the evidence we have summarized not only made the case for the jury, but justified the conclusion of that body that the engineer saw plaintiff in ample time to have avoided striking him, if he had used ordinary care in promptly applying the brakes. It is frankly conceded that plaintiff was obliged to show that the engineer actually saw plaintiff, and failed to use due care to avoid injuring him.

A majority of the court is of the opinion that the evidence does not show that the engineer did not do all he could to avoid the accident after seeing plaintiff in a position of peril. The train was running at high speed; it was in the night time, and a headlight, however good, is not daylight; there was no reason to anticipate obstructions on the bridges or trestles, and no particular reason why the engineer should have been watching the track ahead. There is no evidence but his own that he was. The distance between the engine and plaintiff grew shorter very fast, and the evidence of estimates of what this distance was at any particular point is most unsatisfactory. The unexpected appearance of an object on the track ahead required reasonable care of the engineer, but no more; the circumstances must be considered, and the failure to apply brakes instantaneously would not show negligence. Plaintiff's case is utterly devoid of real merit, and it is only the so-called "wilful or wanton" negligence doctrine that gives him a standing in court in spite of his gross negligence and trespassing. It is manifest from the nature of the case that it cannot be improved on another trial. All those who

saw the accident have testified fully. According to the views of a majority of the court, it is a case for final judgment, rather than a new trial.

Order reversed and judgment for defendant ordered.