# J. B. HUME v. DULUTH & IRON RANGE RAILROAD COMPANY, AND JOHN BARTON PAYNE, AGENT OF THE PRESIDENT.[1]

June 10, 1921.

No. 22,297.

**Railway — safeguards at highway crossing — no question of negligence for jury.**

1. The evidence stated in the opinion was not sufficient to warrant the submission to the jury of a charge of negligence on the part of a railroad company based on its failure to maintain a watchman, gates, automatic bells or other signals, at a highway crossing to warn travelers of the approach of trains. There is no hard and fast rule for determining whether there should be a submission of such a charge of negligence. The facts and circumstances of each case must be the guide to the trial courts in deciding upon the course to be followed.

**Judgment notwithstanding verdict.**

2. The evidence did not entitle appellants to judgment notwithstanding the verdict.

Action in the district court for St. Louis county to recover $50,000 for injuries received while a passenger in an automobile bus and caused by the negligence of defendants' servants. The case was tried before Freeman, J., who when plaintiff rested denied the separate motions of the railway company, the director general of railroads, the transfer company and defendant Vidas to dismiss the action as to them, and at the close of the testimony denied the motion of defendant railway company, of the director general and of the Federal agent for a directed verdict in their favor, and a similar motion in behalf of the other defendants. The court directed a verdict against the transfer company and Vidas, and a jury which returned a verdict against all the defendants, fixed the damages at $12,000, and answered in the negative the special question set out in the second paragraph of the opinion.

[1]Reported in 183 N. W. 288.

From an order denying their motion for judgment notwithstanding the verdict or for a new trial. the railroad company and the agent of the President appealed. Reversed and a new trial granted.

*Howard T. Abbott* for *Abbott, MacPherran, Gilbert & Doan,* for appellants.

*Boyle & Montague,* for respondent.

LEES, C.

Plaintiff, a passenger in an autobus of the Biwabik Transfer Company, driven by Vinco Vidas, was injured on February 13, 1919, at about 7 o'clock in the evening, when the bus was struck by appellants' train at a highway crossing. The complaint charged that the collision was due to the negligence of Vidas and the transfer company in operating the bus and of the railroad company in operating its train. As to the latter, one of the charges of negligence was the failure to have, at the crossing, a watchman, gates, an automatic bell or other signal, to give warning of approaching trains.

The court denied appellants' request for a directed verdict, instructed the jury to return a verdict against the transfer company and Vidas, and submitted the following special question: "Did the driver of the bus actually see the approaching train in time to have avoided the collision by the use of reasonable care?" The jury answered "no" and returned a general verdict in plaintiff's favor for $12,000. The railroad company and the agent of the President have appealed from an order denying either judgment notwithstanding the verdict or a new trial.

At the crossing the railroad runs substantially east and west and the highway northeasterly and southwesterly. From a point about 1,000 feet west of the crossing the railroad and highway gradually come nearer together until just before the crossing is reached. At that point the highway bends and passes over the track on an upgrade beginning about 85 feet from the rails. At the time of the collision the bus was going east and the train west. The railroad track is laid on a roadbed slightly higher than the highway. A traveler on the highway from the west has a clear view of the railroad for at least 500 feet before reaching the crossing, and for 900 or 1,000 feet more to the east of the crossing. A mine called the Elba is located north of the railroad, east

of the highway, and not far from the crossing. There are a number of switch tracks leading to the mine. Most of them leave the main track east of the crossing. West of the crossing there is a small building used as a station. At the time of the collision there was snow on the ground and the surface of the highway was slippery and had ruts in it. The train consisted of an engine and two coaches. The engine was equipped with an electric headlight and the coaches were lighted. The train approached the crossing on an upgrade and was running on time and at a speed of from 15 to 20 miles an hour. The bus had electric headlights and was lit up inside by electricity. The upper portion of the body of the bus, on all sides, was of glass. The driver sat inside, but could see in every direction. The bus approached the crossing at a speed of about 15 miles an hour. When it reached a point 500 or 600 feet away, the speed was gradually reduced to 5 or 6 miles an hour.

Vidas was familiar with the crossing. He testified he saw the train and intended to bring the bus to a stop when within 35 or 40 feet of the track. When he reached that point, he applied the foot brake and then the emergency brake, but the bus did not stop. He testified that the icy ruts in the road caused the wheels to slide or skid up to the track, and immediately the collision took place. The evidence does not show to a certainty where the train was when Vidas first saw it. It is conceded that the whistle was blown for the crossing. The evidence is conflicting as to whether the engine bell was rung from the whistling post to the crossing. There is considerable travel over the highway. Several hundred people live at the Elba location. Photographs of the crossing and the adjacent territory show that there are no buildings, stock pens, piles of building or other materials, trees, brush or other obstructions to the view of the crossing or the railroad track.

When the evidence was closed, appellants' counsel, after their motion for a directed verdict had been argued and denied, made this statement to the court: "We * * * respectfully object to the court submitting to the jury the question of the absence of a flagman or of an automatic gong, or of safety gates, as the court indicated he believed it advisable so to do."

In charging the jury, the court said that negligence was the basis of plaintiff's cause of action, and, unless the jury found that the railroad company was negligent in one or more of the respects charged, there could be no recovery. Then there was a statement of the negligence with which the company was charged, including its failure to maintain a watchman, gates, automatic bells or other signals at the crossing, followed by this instruction: "In this connection you have a right to take into consideration the condition of the crossing and of the road approaching the crossing, its location in reference to the Elba location and the amount of traffic that might commonly be expected to pass over said road. * * * After taking all those things into consideration, you are to say whether it was negligence on the part of the railroad company to fail and neglect to provide a watchman at said crossing or to provide suitable crossing gates, automatic bells or other signals to warn pedestrians or persons in vehicles using said highway."

Appellants insist that this was prejudicial error.

The court's views on the subject have been heretofore expressed. Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882; Zenner v. Great Northern Ry. Co. 135 Minn. 37, 159 N. W. 1087; and Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440. In the Lawler case, it was held that the failure to maintain a flagman, gates or a signal bell at railroad crossings was an element to be considered in determining whether a railroad company was negligent in running a train through a village of 700 people at a speed of between 50 and 60 miles an hour. In the Zenner case, the court sustained the submission of the question whether ordinary care required the maintenance at a crossing of extra precautions to warn travelers of the approach of trains. In that case a train could not be seen until a traveler was within 40 feet of the track and the crossing was the busiest in the city of St. Cloud. In the Gowan case, the traveler's view of an approaching train was obstructed; the crossing was in a village through which trains were run without a stop, the speed varying from 40 to 60 miles an hour. The submission of the question under consideration was sustained in view of the location of the crossing, the surrounding conditions, and the speed at which trains were regularly run over it.

In the Zenner case, it was expressly stated that whether extra precau-

tions might be required at country road crossings to give warning of the approach of trains, was a question not presented by the record. Appellants assert that it is presented in the present case and must be decided. Manifestly it would be absurd to say that the right of a plaintiff, injured at a railroad crossing, to go to the jury with this question depends wholly on whether the crossing is in the country or in a city or village. The facts and circumstances in each case must be the guide in determining whether there is a fair question about which reasonable men might differ. It may be said this leaves the question up in the air, but that may also be said of many other established rules of the law of negligence.

Everybody will agree that, in the case of, a railroad crossing over a little-traveled road on a western prairie where a train may be seen for miles, no reasonable man, sitting as a juror, could find negligence from the failure to maintain a flagman, gates or an automatic bell. Equally unanimous would be the contrary opinion where a railroad crosses at grade a busy street in the heart of a populous city. The two extremes used for illustration are as far apart as day and night. Midway between, there are cases which come so near the border line it is hard to know on which side they lie. As at the twilight hour, it is not easy to say with certainty when day has ended and night begun, so it is with such cases. We attempt to state no hard and fast rule, for there can be no absolute criterion. We merely hold that it is for the trial court to say in the first instance whether the evidence is such as to make a railroad company's failure to maintain extra warning precautions at a particular crossing a proper subject for the consideration of the jury in determining whether the company was negligent. We should have to go farther than we did in the Gowan case to hold that the jury might properly consider it in the instant case. Two of the important features of that case are absent here, namely, the obstructions to the traveler's view and the high speed at which trains were regularly run through the village and over the crossing. We are not inclined to extend the doctrine of the Gowan case.

We are of the opinion that the facts here would not support a finding of negligence based on appellants' failure to maintain at this crossing either a flagman, gates, automatic bells or other signals not requir-

ed by statute. This conclusion necessitates a new trial, but, of course, it does not entitle appellants to judgment notwithstanding the verdict. There was some evidence to sustain plaintiff's other charges of negligence.

Appellants insist that the uncontradicted testimony of Vidas that he saw the train coming and intended to stop to let it pass is conclusive on the question of whether the negligence charged was a proximate cause of plaintiff's injury. Stated otherwise, the proposition is that, if Vidas saw the train in time to stop for it and intended to do so, the failure to give warning signals of its approach or to keep a vigilant lookout for travelers nearing the crossing had nothing to do with the accident, because the sole cause for it would be Vidas' negligence in driving too near the track before he tried to stop. There is much force in this contention, but its validity rests on the assumption that Vidas actually saw the train before he tried to stop. There was evidence of statements to the contrary made by him immediately after the accident. There was also testimony by eye-winesses of the accident as to the movements of the bus as it came up to the crossing, from which it might be inferred that Vidas did not see the train or he would not have proceeded as he did. We think the jury might have concluded that his testimony as to this phase of the case should not be credited. If it is eliminated, there is enough left to make it improper for this court to say that the evidence is conclusive against the verdict or that defects in it may not be supplied on a new trial. National Cash Register Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585; Kjerkerud v. Minneapolis, St. P. & S. S. M. Ry. Co. 148 Minn. 325, 181 N. W. 843.

The order is reversed and a new trial granted.