## DUNCAN BEATON v. DULUTH, WINNIPEG & PACIFIC RAILWAY COMPANY.[1]

December 8, 1922.

No. 23,038.

**Judgment notwithstanding verdict sustained.**

1. Action for personal injury occasioned by the explosion of the boiler on a locomotive which appellant was operating. *Held* that an order for judgment in favor of defendant, notwithstanding the general verdict, was justified by the record and special verdict.

**Charge to jury correct.**

2. An instruction that failure to equip a locomotive boiler with fusible plugs may be disregarded by the jury, in considering the question of defendant's negligence in furnishing a proper locomotive for appellant's use, was not error under the record of this case.

**No prejudicial error.**

3. There was no reversible error in the rulings upon the admissibility of evidence, or the right to cross-examine.

[1]Reported in 191 N. W. 44.

Action in the district court for St. Louis county to recover $40,-000 for injuries received in a boiler explosion. The case was tried before Cant, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $5,000, and answered in the negative the specific question found near the end of the opinion. From a judgment entered in favor of defendant notwithstanding the verdict, plaintiff appealed. Affirmed.

*Tautges & Wilder*, for appellant.

*Washburn, Bailey & Mitchell*, for respondent.

QUINN, J.

Action to recover for personal injuries sustained through the alleged negligence of the defendant, in the way of furnishing plaintiff with a defective locomotive to use while in its employ as a locomotive engineer on his run between Fort Frances, Canada, and Duluth, Minnesota. There was a general verdict in favor of plaintiff. The trial court made an order setting aside the verdict and ordering judgment in favor of the defendant, and from a judgment entered thereon plaintiff appeals.

On December 25, 1919, plaintiff left Fort Frances in charge of a locomotive, hauling a train of freight cars. He arrived at Virginia about 4 o'clock on the morning of the twenty-sixth, where he received locomotive No. 2,457 from the roundhouse, all fired up and with 160 pounds of steam on. At 5 o'clock he pulled out with a train of 54 freight cars; when he reached Shaw about 33 miles out from Virginia he took water, and just after he passed Bartlett, 15 miles out from Shaw, the boiler of the locomotive exploded injuring plaintiff as complained of herein.

The locomotive was of the large standard type, bought new 3 years before. It was made by the American Locomotive Works, did not have any fusible plugs, and had been inspected by the government boiler inspector 3 days previous to the accident. The fire-box on such locomotives is built in the form of an arch, out of boiler plate. Surrounding and covering the top of the arch is a space for water. The top and sides of the arch are called the crown

sheet. When in operation the crown sheet must be covered with water, otherwise it would become overheated, and, from the great pressure of steam from within, give way with such force as to cause an explosion. The amount of water in the boiler is indicated through a glass gauge located immediately in front of the engineer as he sits in his cab. In order to cover the crown sheet, the water must appear in the glass gauge.

The negligence complained of is that the defendant furnished the plaintiff, on the occasion in question, a defective locomotive, in that the crown sheet had been burned and weakened before the locomotive was turned over to him at Virginia, and that the boiler was not supplied with fusible plugs.

In submitting the issues to the jury the court gave the following instruction: "He also claims that there were no fusible plugs installed in the top of the crown sheet at the time and place in question, and that this was a safety device which the company should have provided. He urges this as an additional ground for recovery in this case. This latter ground you may disregard. In the opinion of the court it is not of importance in this case and you may dismiss it from your further consideration."

It is contended that the failure of the defendant to maintain fusible plugs on the boiler raised an issue of fact to be passed upon by the jury, i. e., whether the failure to equip the boiler with fusible plugs was the proximate cause of the explosion. The plaintiff offered testimony tending to show that fusible plugs would have had a tendency to prevent an explosion under the circumstances. It appeared, however, from the uncontroverted proofs in the case, that fusible plugs are still used on small boilers, but their use upon the defendant's line of road, as well as upon nearly all standard roads throughout this country and Canada, in large locomotives had been abandoned, upon the theory that they are ineffective and a danger trap rather than a safety device. The appellant knew they had never been used by respondent upon its line of road during the time he had been in its employ, nor on the other standard roads upon which he had worked in this country. The locomotive in question was manufactured by one of the largest manufacturers of loco-

motives in the world. It had been inspected by the government inspector 3 days before the accident. The appellant was confessedly familiar with the class of locomotive used by the respondent during the 7 years of his employment and that they were not supplied with fusible plugs, and yet he assumed the risk in this respect, if any there was. The theoretical purpose of fusible plugs would be to give warning, or possibly dampen the fire, after the engineer had allowed the water to get below the top of the crown sheet. It was under such a showing that the trial court took the fusible plug theory away from the jury, and we think rightly so under the proofs.

It is clear that the cause of the explosion was, primarily, low water in the boiler, thereby allowing the overheating and weakening of the crown sheet. Appellant claims that this condition all occurred prior to the time he received the locomotive from the roundhouse at Virginia; respondent, that it occurred while appellant was in charge of the locomotive on the morning in question and as a result of his negligence. Under the evidence this was for the jury to determine. It appears that the burned portion of the crown sheet extended about 9 inches below the top of the crown sheet, and that the boiler plate had been stripped from the stay bolts, without damaging the heads or threads of the bolts, which would hardly occur unless the metal was under intense heat at the time of the explosion. However, the trial court submitted to the jury the following specific question:

"Was the engine and boiler in question in a defective and dangerous condition, as claimed by plaintiff, at the time the same was furnished to the plaintiff for service, on December 26, 1919?"

This question was answered in the negative by the jury, and that answer disposes of the question of contributory negligence on the part of appellant. We discover no reversible error in the rulings upon the admissibility of evidence, or the right to cross-examine.

Affirmed.