### JOHN McDONALD v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 30, 1925.

No. 24,818.

**Evidence did not justify verdict based on negligence of defendant.**

    The finding that the accident resulted from negligence on the part of defendant was not justified by the evidence and the court acted correctly in so ruling.

See Trial, 33 Cyc. p. 1087.

Action in the district court for St. Louis county to recover for personal injuries. The case was tried before Kenny, J., and a jury which returned a verdict in favor of plaintiff. Plaintiff appealed from an order granting defendant's motion for judgment notwithstanding the verdict. Affirmed.

*Gannon, Strizich & Farnand* and *W. P. Crawford,* for appellant.

*F. G. Dorety, A. L. Janes* and *Baldwin, Baldwin, Holmes & Mayall,* for respondent.

[1]Reported in 205 N. W. 633.

TAYLOR, C.

This is an action for personal injuries. At the conclusion of the trial, plaintiff dismissed it as to defendant Patterson, and the term defendant, as used hereafter, will refer to defendant railway company only. The trial resulted in a verdict for plaintiff. Defendant made the usual alternative motion for judgment non obstante or a new trial. The court granted the motion for judgment and plaintiff appeals.

Third avenue in the village of Hibbing runs north and south and is crossed at right angles by three railroad tracks, known respectively as the main track, the passing track and the industrial track. Measuring from center to center, the passing track is 15 feet north of the main track, and the industrial track 42 feet north of the passing track. Sidewalks 16 feet wide extend along both sides of the street which is 75 feet wide. Between the passing track and the industrial track there was a snowbank along the edge of the sidewalk on the east side of the street. This snowbank had been formed in part by snow shoveled from the crossings by the sectionmen. A small shanty for the watchman at the crossing was located a few feet north of the passing track and east of the sidewalk. The depot was a little over 300 feet east of the crossing. There were three watchmen to guard the crossing—one, employed by the railway company, on duty from 7 o'clock in the morning until 3 o'clock in the afternoon; another, employed by the village, on duty from 3 o'clock in the afternoon until 11 o'clock at night; and the plaintiff, also employed by the village, on duty from 11 o'clock at night until 7 o'clock in the morning.

On February 13, 1923, the passenger train due at Hibbing early in the evening was delayed by a bad snow storm and did not arrive until plaintiff had gone on duty. It came in from the west and ran across Third avenue on the main track down to the depot. It then backed west on the main track beyond Third avenue. In front of the passenger engine there was a stock car, another car and another engine with a snowplow mounted on a car in front of it. These cars and this engine were cut off from the passenger train after it

had been backed west of Third avenue, and this engine then ran east on the main track until it reached a switch east of the depot leading to the passing track. This switch was thrown and the engine then backed west over the passing track across Third avenue. Plaintiff says it had the two cars attached, pulling them when running east on the main track and pushing them when backing west on the passing track. Plaintiff flagged the crossing while the engine passed going east, and then went into his shanty and watched for it to come back. It was equipped as a switch engine with a headlight at both ends. When it was coming back, plaintiff saw the light as it passed the depot and also saw the light of an automobile on Third avenue coming toward the crossing from the north. He started for the crossing swinging his lantern and the automobile stopped, but he continued on toward the street. He says that the two cars and the engine passed without touching him, but that the wing of the snow-plow caught his legs and threw him down. His right leg was cut off between the ankle and the knee and he suffered other injuries.

The action has been tried twice. The only claim of negligence submitted to the jury at the first trial was the claim that the wings of the snow-plow extended laterally beyond the sides of the remainder of the train. The trial court granted a new trial on the ground that the evidence would not sustain a finding that any part of the snow-plow projected beyond the sides of the engine or the sides of the car to which it was attached. At the second trial the court directed the jury to determine whether defendant had permitted the snowbank to remain in dangerous proximity to the track, and, if so, whether its negligence in that respect was the proximate cause of plaintiff's injury, and withdrew from the jury all other charges of negligence. Subsequently the court directed a judgment for defendant notwithstanding the verdict on the ground that the evidence would not warrant a finding that the accident happened in consequence of the existence of the snowbank.

We think the trial court reached the correct conclusion. The only testimony showing how the accident happened is that of the

plaintiff himself. No one else saw it, and no one knew of it until he was found on the crossing by a bus driver after the train had passed. Plaintiff nowhere states that the snow-bank interfered with his movements in any way, or had any part in causing the accident. He made no claim in his testimony that it obstructed his line of travel or caused him to deviate from his course. When asked where he was when struck, he answered that he was on the sidewalk "almost opposite this snow-pile." That is the only reference he made to the snowbank in giving his account of what happened. He stated later in answer to questions by his counsel that he had seen the snowbank before the accident, but did not know how much space there would be between it and a passing car. There is no evidence which will justify an inference that the snowbank was the proximate cause of the accident.

Plaintiff urges here that the court should have submitted to the jury the other grounds of negligence alleged in the complaint. He made no objection and took no exception to the charge withdrawing those claims, and apparently acquiesced therein. However, we have examined the record carefully to see whether the evidence would justify submitting any of them to the jury as a basis for a verdict, and are satisfied that the court ruled correctly. The evidence will not justify a finding that the snow-plow was defective or projected unduly beyond the track or was improperly handled.

The claim that there was no light on the forward end of the first car backed over the crossing and that the train gave no warnings of its approach and was run at a high rate of speed, if proven, could not be a basis for a verdict under the circumstances of this case. Plaintiff was a watchman whose sole duty was to watch out for trains and keep people out of the zone of danger whenever trains passed over the crossings. He saw this train and knew it was coming. He had seen it cross this street a few minutes before. He had all the information which warnings could have given, and is not in position to predicate a cause of action upon an alleged failure to give them.

Plaintiff was not an employe of the railway company, but an employe of the village. He sustained a serious injury while in per-

formance of the duties assigned to him by the village. He was doubtless entitled to compensation therefor from the village under the Workmen's Compensation Law. It does not appear whether any proceedings were instituted under that law, nor whether the time within which they may be instituted has expired.

As the evidence fails to show that the accident resulted in consequence of negligence on the part of defendant, the order of the trial court must be and is affirmed.