NORRIS M. NADEAU v. MARYLAND CASUALTY COMPANY.[1]

February 25, 1927.

No. 25,781.

**When unilateral mistake will justify relief as well as mutual mistake.**
    1. Unilateral mistake by one party to a contract and knowledge of that mistake by the other, who takes advantage of it, is equivalent in operation and result to mutual mistake and will justify relief as fully. Rule applied to the release of a claim under a personal accident insurance policy.

**Judgment notwithstanding not warranted by variation between pleading and proof.**
    2. The complaint alleged fraud and mutual mistake, but not unilateral mistake of plaintiff known to and taken advantage of by de-

[1]Reported in 212 N. W. 595.

fendant. The fact alone that the cause of action is not technically within the complaint does not justify judgment for defendant non obstante.

**When judgment notwithstanding verdict should not be ordered.**

3. Judgment notwithstanding the verdict should not be ordered where it is probable that any mere deficiency in either pleading or proof can be supplied if another trial is had.

Contracts, 13 C. J. p. 375 n. 60; p. 379 n. 89; p. 380 n. 95.
Judgments, 34 C. J. p. 1180 n. 20, 21.
Replevin, 34 Cyc. p. 1057 n. 92; p. 1058 n. 95.

See note in 12 L. R. A. (N. S.) 1021; L. R. A. 1916E, 828; 15 R. C. L. 606; 3 R. C. L. Supp. 474.

Plaintiff appealed from an order of the district court for Hennepin county, Montgomery, J., granting defendant's motion for judgment notwithstanding the verdict. Reversed.

*Edward Cohen* and *J. J. Traux*, for appellant.

*Kingman, Cross, Morley & Cant* and *Edwin D. Ford, Jr.*, for respondent.

STONE, J.

Action to recover on a policy of personal accident insurance, it being conceded that plaintiff is wholly and possibly permanently disabled. The defense is a compromise resulting in a formal release for consideration. After a verdict for plaintiff, defendant's alternative motion resulted in an order for judgment. Plaintiff appeals.

The injury which caused plaintiff's disability occurred May 14, 1923. Both he and his then employer were subject to the compensation law. He received compensation and treatment accordingly from the compensation insurer. For a period. he also received the benefits provided for by the policy upon which this suit is brought. In September, 1923, plaintiff seemed to be making a good recovery. He had made one journey, to his former home in Oregon. Returning, he concluded that his cure would be expedited if he could go back to and remain in Oregon for a further time. He had already

procured an advance on his compensation. Seeking more funds he approached Mr. French, the adjuster for defendant, for an advance on his policy. He was told that Mr. French could not make an advance but that he could make a settlement.

At no time has plaintiff had the services of a physician of his own choosing. For a time he had undergone treatment at Rochester. In August he had returned to Minneapolis and from that time on was in charge of Dr. Voyer, who treated him for the employer's insurer. The jury was instructed that Dr. Voyer was not the representative of defendant but there is testimony by Mr. French, its adjuster, that Dr. Voyer had made examinations for defendant and was one of "our staff." When settlement was proposed, Mr. French sent plaintiff to Dr. Voyer for examination and report. Mr. French told plaintiff, so the latter says, to tell Dr. Voyer that he, French, sent plaintiff to him for that purpose. Plaintiff went to Dr. Voyer and reported to French that the doctor had said·"there is nothing wrong with you only bruises, around through my back and in just a little time you will probably be well;" and that he would be able to go to work in from two to four months. Plaintiff claims to have told French "identically" what the doctor had said to him.

Plaintiff did not bring from Dr. Voyer to French any written report of the examination. His testimony is that French phoned the doctor for his statement but failing to get what he wanted said: "I guess we can't do anything today." Thereupon it developed that shortly before plaintiff had been examined by a Dr. Geist, representing the industrial commission. He happened to have Dr. Geist's report with him. It certified that an examination of plaintiff on August 30, 1923, had resulted in the following findings:

"Head—there is partial deafness on the right ear and marked deafness on the left ear * * *. The history of the case is that of concussion of the brain and bleeding from both ears. Vision is also impaired. Patient at the present time has a chronic lumbrosacral disease which will probably give him trouble for a long time to come. He is in an extremely nervous condition as a result of his injury, and in my opinion is as yet unable to return to work. In

my opinion this case should have if possible, a sedentary occupation in a quiet location."

Plaintiff says he gave that report to Mr. French and that the following conversation ensued: French: "Do you understand this here?" Plaintiff: "No, I don't understand them big words there, that is one thing I don't understand." French: "Well, I will tell you, you give me this paper, I will give you this money today and fix this up and I will get Dr. Voyer's testimony or report tomorrow and it will be just the same." Within five minutes, according to plaintiff, the settlement was consummated. Plaintiff claims to have been nervous and that he "didn't know half" what he was doing. For $673.65 he formally released defendant from further liability. He got only about $300 more than the benefits then due him. Under this policy, plaintiff would be entitled, were it not for the release, to $25 per week during total disability.

1. In order for plaintiff to prevail it is necessary that the release be set aside. That process is equitable and in matters of contract equity prevents one from taking knowing and unconscionable advantage of another's mistake for the purpose of enriching himself at the other's expense. It is but "obvious justice that mistake by one party and knowledge of the mistake by the other, will justify relief as fully as mutual mistake." 3 Williston, Contr. § 1497. Equity is slow to grant relief from mistake of law even when it is mutual, but even with unilateral mistake of law relief may be had by the innocent party if his mistake is accompanied by inequitable conduct on the part of his adversary, as where the latter knowingly has sought advantage from it for his own unconscionable enrichment. "All the cases which deny a remedy for a mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other." Haviland v. Willets, 141 N. Y. 35, 50, 35 N. E. 958, 960. (These authorities were considered somewhat in Peterson v. First Nat. Bank of Ceylon, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185). We think there is room for the application of that principle to the facts of this case.

Mr. French is a member of the bar who for some fourteen years has been an adjuster for defendant. He is a man of experience and by the jury could have been held to know the serious potentialities of any sacro-iliac injury. Plaintiff, who seems to be alert and capable, is yet without much education. He claims not to have understood, and says that he told French that he did not understand the "big words" in Dr. Geist's report. Plaintiff's testimony indicates that it told him nothing that he did not know except that he had "a chronic lumbrosacral disease which will probably give him trouble for a long time to come." That statement indicated an injury, of unknown duration, of the sacro-iliac joint, one which as often as not results in permanent disability. The plain proof on his part is that plaintiff did not know the meaning of the scientific characterization of the trouble by Dr. Geist and was ignorant of its serious portent. He was ignorant both of the specific fact of the injury and the equally specific and more serious fact of its dubious prognosis. He did not know that he had only an even chance of avoiding permanent disability.

If the evidence stopped there it would not help plaintiff. But it goes much further in that plainly it would support a finding that Mr. French knew precisely the serious nature of the Geist diagnosis and that plaintiff was going into the compromise in ignorance of the very important fact of the sacro-iliac strain and its threat of permanent disability. If plaintiff was to be believed at the points where there is denial of his testimony, and the jury did believe him, it cannot be said as a matter of law that the evidence is not of that clear and convincing character which is necessary to the cancelation of a contract such as a release. Its credibility and not its cogency otherwise was the issue and that was for the jury.

2. The trouble from plaintiff's standpoint is that the precise issue just discussed, the affirmative of which if established will entitle him to judgment, is not within the pleadings as they now stand. Plaintiff sought to recover because of fraudulent misrepresentation and mutual mistake of fact. He failed to establish either. So we have no occasion to consider the many authorities cited in which

relief from a release of damages for personal injuries has been sought on the ground of mutual mistake. Some of them seem to have overlooked the plain fact that because settlements of that kind intentionally dispose of matters involving much doubt they "are governed by special considerations" whether the mistake involved is one of law or fact. 2 Pom. Eq. Jur. (3d ed.) § 849. Our last case involving the question probably is Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643. But plaintiff's proof does go to show unilateral mistake and permits also the finding that defendant, through Mr. French, may have knowingly taken advantage of that mistake in defiance of equity.

Within the issues made by the pleadings, there was technical ground for judgment notwithstanding the verdict. But the evidence is so clearly open to a finding for plaintiff on the other closely allied equitable ground for relief, above discussed, that on the merits the motion for judgment should have been denied.

3. This is not a case where we are reviewing as possible error anything not so assigned or assignable within the rule of Whitely v. Mississippi W. P. & B. Co. 38 Minn. 523, 38 N. W. 753. Plaintiff does complain of the instruction eliminating Dr. Voyer from the case as a representative of defendant. On this appeal he cannot assign error as to that ruling and we have not considered it in that aspect at all. Dr. Voyer's assurance to plaintiff, communicated to Mr. French, has been considered simply as part of the evidence going to show mistake on the part of plaintiff. Plainly, it might have had the effect of putting him into a position of assurance where he did not give to the report of Dr. Geist the understanding attention which otherwise it might have had. In any aspect of the case, it was clearly relevant on the question of plaintiff's mistake. In that light only it has been considered and we decline to affirm the order for judgment because the evidence so clearly supports a theory upon which there can be a recovery by plaintiff.

The rule is that judgment non obstante should not be ordered where there is any probability that a deficiency of proof may be made good upon another trial. There is much more reason for hold-

ing, as we do, that judgment should not be ordered where there is no deficiency in the proof but only a failure of the pleadings to come up to it. Defects of pleading are less serious and more readily removable than those of proof. Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958; Fohl v. C. & N. W. Ry. Co. 84 Minn. 314, 87 N. W. 919; Wessel v. Gigrich, 106 Minn. 467, 119 N. W. 242; Larson v. G. N. Ry. Co. 116 Minn. 337, 133 N. W. 867; Dun. Dig. § 5082.

This is a mere case of variance. The complaint alleges two grounds of relief. The proof supports neither but is sufficient to establish a third and variant but related ground. The only difficulty is that the latter was not submitted to the jury. Judgment should not have been ordered for defendant and the order appealed from must be and is reversed.

So ordered.