## WILL S. OPPERUD v. H. E. BYRAM AND OTHERS.[1]

January 13, 1928.

No. 26,421.

**Judgment notwithstanding verdict correct because evidence failed to prove negligence.**

    The evidence fails to prove any negligence on the part of the defendants and is practically conclusive against the verdict. The order granting judgment notwithstanding the verdict was correct.

Judgments, 33 C. J. p. 1185 n. 52.

----

See note in 12 L.R.A.(N.S.) .1021; L. R. A. 1916E, 828; 15 R. C. L. 606; 3 R. C. L. Supp. 475; 5 R. C. L. Supp. 844.

[1] Reported in 217 N. W. 379.

Plaintiff .brought an action in the district court for Yellow Medicine county against defendants as receivers of the Chicago, Milwaukee & St. Paul Railway Company to recover damages for personal injuries. There was a verdict for plaintiff. From a judgment for defendants notwithstanding the verdict, Baker, J. plaintiff appealed. Affirmed.

*Tom Davis* and *Ernest A. Michel,* for appellant.

*F. W. Root, C. O. Newcomb, A. C. Erdall,* and *Daly & Barnard,* for respondents.

OLSEN, C.

Plaintiff recovered a verdict. On motion of defendants for judgment notwithstanding the verdict or for a new trial, the court granted judgment for defendants, and plaintiff appeals from the judgment entered.

The question presented is whether or not there was any evidence reasonably tending to prove negligence on the part of the defendants.

Judgment notwithstanding the verdict will not be granted if there is any evidence reasonably tending to support the verdict. Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958; Bragg v. C. M. & St. P. Ry. Co. 81 Minn. 130, 83 N. W. 511; W. H. Ferrell & Co. v. G. N. Ry. Co. 119 Minn. 302, 138 N. W. 284; Boyd v. City of Duluth, 126 Minn. 33, 147 N. W. 710; National Cash Reg. Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585.

. Judgment will not be so ordered where there is a reasonable probability that the deficiency in proof can be supplied by another trial. Nadeau v. Maryland Cas. Co. 170 Minn. 326, 212 N. W. 595; Farmers State Bank v. Merchants & Mfrs. State Bank, 164 Minn. 300, 204 N. W. 965.

The rule is sometimes stated in this form: That judgment notwithstanding the verdict will not be ordered unless the evidence is practically conclusive against the verdict. Hume v. D. & I. R. R. Co. 149 Minn. 245, 183 N. W. 288; Trovatten v. Hanson, 171 Minn. 130, 213 N. W. 536.

Where there is no reasonable probability that the deficiency or want of proof can be remedied on another trial, judgment should be ordered. Howard v. Farr, 115 Minn. 86, 131 N. W. 1071; Melberg v. Wild Rice Lbr. Co. 127 Minn. 524, 149 N. W. 1069; Willett v. C. M. & St. P. Ry. Co. 139 Minn. 288, 166 N. W. 342; Schmidt v. Capital Candy Co. 139 Minn. 378, 166 N. W. 502; In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; Beaton v. D. W. & P. Ry. Co. 153 Minn. 505, 191 N. W. 44; Clough v. C. M. & St. P. Ry. Co. 154 Minn. 515, 191 N. W. 923; McDonald v. G. N. Ry. Co. 165 Minn. 30, 205 N. W. 633; Karras v. G. N. Ry. Co. 167 Minn. 140, 208 N. W. 655.

Where the evidence fails to show that the accident resulted from any negligence of the defendant, an order of the trial court granting judgment notwithstanding the verdict is proper. Clymer v. Kellogg, Spencer & Sons, 130 Minn. 327, 153 N. W. 602; Gorgenson v. G. N. Ry. Co. 138 Minn. 267, 164 N. W. 904; McDonald v. G. N. Ry. Co. 165 Minn. 30, 205 N. W. 633.

A verdict finding negligence cannot be upheld when based on speculation or conjecture. Swenson v. Erlandson, 86 Minn. 263, 90 N. W. 534.

A detailed statement of the facts in this case is not necessary. Plaintiff was a conductor on one of defendants' passenger trains. His run was from Sioux City, Iowa, to Mitchell, South Dakota, and back to Sioux City where he resided. The train run was from Aberdeen, South Dakota, through Mitchell to Sioux City and return. Mitchell was a division point, and train crews were changed there. The train left Aberdeen at 5:45 p. m. and arrived at Sioux City at 5:05 the next morning. It then remained at Sioux City until 6:45 p. m. when it started on the return to Aberdeen. Plaintiff's run was to take this train at Sioux City and run it to Mitchell, then turn it over to another train crew for the balance of the run to Aberdeen. He then ran either the next train on this schedule or another train back from Mitchell to Sioux City. He had been on this run for some time and was familiar with the train and its coaches and equipment. The train was the ordinary vestibuled

passenger train, with coach, smoker and one or two sleepers, all connected by vestibules. On each side of the door leading from the vestibule into each coach or car is a brass rod, a hollow brass tube about 36 inches long and about an inch in diameter, attached to the end of the car by a swivel joint near or on the door frame of the car, which permits the rod to be swung up or down. When the door from the vestibule to the outside is closed this rod is not in use but is in a vertical position, the upper or swinging end being placed in a slot or clutch near the top of the coach door. When the door from the vestibule to the outside is opened at stations or otherwise so that people may enter or leave the train through the vestibule, this rod is swung down in front of the opened door into a horizontal position and the swinging end fitted into a slot or clutch near the outer corner of the coach. The rod then serves as a protection in front of the glass in the vestibule door and also as a handrail for persons entering or leaving the train. There is a catch on the end of the rod, which holds it in the clutch.

Plaintiff's testimony is that on the evening of July 29, 1925, he took this train out of Sioux City for the run to Mitchell; that shortly after leaving Napa junction at about 9 p. m. he passed through the train and then noticed that the vestibule door leading outside, at one end of the day coach, was open; that he started to close it and reached over to release the outer end of the brass rod, and in so doing took hold of the rod for the purpose of swinging it, leaning on it to some extent; that the rod broke and he was caused to fall out through the open door onto the ground and was injured; that the train was then going at about 25 miles an hour. Plaintiff and one of his witnesses testified that they examined one of the broken ends of the rod and saw some discoloration at the break, from which they concluded that there had been an old break there about one-third through the rod. There was also some testimony by one witness that the proper inspection of these rods was by visual examination and tapping with a hammer. The two parts of the broken rod were introduced in evidence by defendants at the trial and have been returned here and exhibited to this court.

The claims of negligence here made are, in substance, that there was an old break in this rod and that defendants had failed in their duty to furnish safe and proper equipment and instrumentalities, and had failed to exercise the required degree of care in inspecting this rod and keeping it in a safe condition.

It is not and cannot be claimed that this rod, when free from defects, is not a safe and proper rod for the purpose for which it was used. It is part of the standard equipment of many of the principal railways and has never been known to break from ordinary use. The equipment of this train, including these rods, was inspected at Aberdeen before each of the trains on this schedule left that point. This car and rod were so inspected there on July 28 and no defect found. This inspection was visual and not by hammer test. At Sioux City on the afternoon of July 29, the rod was cleaned by the woman who cleaned the car and no defect found. Plaintiff passed through this vestibule half a dozen or more times after the train left Sioux City and before the accident and saw nothing wrong. He passed through the vestibule shortly before the accident and found this vestibule door closed and everything in order. Exactly similar rods have been tested and found to sustain a weight of from 500 to 900 pounds before bending. A like rod, sawed more than one-third through, will sustain a weight of 300 or more pounds before bending. Even if broken half through, the rod could not have parted by reason of plaintiff's taking hold of it with his hand and leaning upon it. The testimony as to the end of the rod's being discolored is too vague and uncertain to base any reasonable inference thereon. The rod was not brittle, and the break is not a clear or straight break such as comes from the breaking or fracture of a brittle substance, but is a jagged and irregular break such as comes from repeated bending or twisting. It could not have come without the application of great force.

The inspection testified to, and not disputed, was sufficient. There is no evidence that anyone had knowledge or notice of any defect in this rod, nor that any defect therein existed prior to the accident or for such time or in such a situation that defendants, by the exer-

cise of reasonable care, could or should have discovered and remedied same. The rod itself bears mute testimony to the fact that, even if broken one-half through, it could not have parted in the way claimed. The character and use of this rod were not such as to require frequent or minute examination.

The evidence is practically conclusive that the accident could not have happened in the manner claimed, and there is no evidence reasonably tending to establish negligence on the part of the defendants.

Judgment affirmed.