## HARVEY J. WOLF v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

May 9, 1930.

No. 27,722.

[1]Reported in 230 N. W. 826.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *W. H. & H. W. Gillitt,* for appellant.

*Tautges, Wilder & McDonald* and *F. M. Miner,* for respondent.

HOLT, J.

The defendant appeals from the order denying its motion in the alternative for judgment or a new trial.

At 10:30 p. m. December 11, 1927, plaintiff, a conductor of a switching or transfer crew in the terminal yards of defendant at Milwaukee, Wisconsin, in the course of the employment met with an accident that necessitated the amputation of his right leg four inches above the knee. Receivers were then operating the railroad, and this action to recover for the injuries was brought against them. But on the trial it was stipulated that defendant should be substituted for the receivers, since it subsequently acquired ownership of the road under an agreement whereby responsibility to the employes of the receivers for injuries was assumed by defendant. We hereafter refer to defendant as the employer instead of the receivers.

Defendant had several switch yards at Milwaukee. . A train of 90 cars, too heavy for one haul, was at the Canal street yard to be distributed by plaintiff and his crew to other westbound yards in and adjacent to the city. Sixty-two of these cars were taken and distributed to different yards, and on the return trip east the locomotive was running backwards pulling only the terminal caboose. The crew stopped at the depot of the North Milwaukee yard where plaintiff, before proceeding farther, must obtain running orders, since they were to run on the eastbound main line to the Canal street yard. The rules of defendant require the conductor to exhibit and read the orders to the engineer, who is given a copy which he must compare with the one being read. Plaintiff claims that at this time a member of the crew, seeing plaintiff coming, signaled the engineer to start, and plaintiff boarded the caboose without having communicated the running orders to the engineer as the rules prescribe. After a few minutes plaintiff undertook to pass from the caboose to the locomotive to read and hand the orders to the engineer. The caboose had both end and side door but no end platforms. An eight-inch sill extends out from the ends of the caboose to which the bumpers holding the couplers are attached. On each side of the end doors are handholds or grabirons. On the corners of the caboose are end and side ladders to the top, the end ladders having no stirrup.

Plaintiff claimed that on this occasion the caboose usually taken by him on trips of this character was not used but one known as

01456. The two are of similar construction except that the device for sounding the whistle and applying the air brake to stop the train is on the top of No. 01456 instead of inside as on the other. The right of recovery was based upon the alleged negligence in permitting the door latch handle of the end door next to the locomotive to remain affixed insecurely so that when plaintiff, in passing out through the door as he started for the locomotive, took hold of the handle to pull the door shut, the handle suddenly gave way and he fell backwards between the caboose and locomotive, a wheel of the former crushing his leg before the train could be stopped.

The defense, in addition to denial of negligence, was contributory negligence and assumption of risk. There was a general verdict for $32,500. The jury also found specially that the injury occurred while plaintiff and defendant were engaged in interstate commerce and that no negligence of plaintiff contributed to the loss suffered.

Defendant answered without raising any issue as to the propriety of trying the case in the courts of this state or as to the placing of an undue burden on interstate commerce. But later when plaintiff sought to take depositions in Milwaukee, this defendant instituted an action in a court of general jurisdiction in Wisconsin to enjoin the prosecution of this pending action and from taking the deposition of certain witnesses therein, joining as defendants not only one of this plaintiff's attorneys but also the witnesses whose depositions plaintiff sought to take, to prevent them from testifying by deposition or otherwise in this action. A temporary restraining order was obtained and kept in force pending an appeal to the supreme court of Wisconsin from the order denying an injunction. When the instant case was ready for trial there were motions for continuances on the ground that necessary witnesses could not attend because of the restraining order defendant had procured and kept in force by bond pending the appeal. Defendant also moved to dismiss because of alleged unprofessional conduct of plaintiff's attorney and moved to amend the answer, setting up such conduct and issues tending to show that interstate commerce was unduly burdened by such unprofessional conduct, and invoking for the

Wisconsin restraining order the application of the full faith and credit clause of the federal constitution. The motions were denied. When the trial started an additional objection was made to the amount of the cost bond required by the court. Also defendant's challenge to the petit jury panel was sustained, and over its objection the court directed a jury to be impaneled from bystanders. These objections were overruled and exceptions to the rulings are assigned as error.

The cost bond was within the discretion of the court. So was the matter of an amended answer, and without further discussion we hold that there was no abuse of discretion in the court's action on either matter. Authority to impanel a jury from bystanders is expressly conferred on the trial court by G. S. 1923 (2 Mason, 1927) § 9467. The other preliminary orders of which complaints are made we deem sufficiently disposed of against defendant by the opinions in Boright v. C. R. I. & P. Ry. Co. 180 Minn. 52, 230 N. W. 457, and Hoch v. Byram, 180 Minn. 298, 230 N. W. 823.

Defendant contends that it is entitled to judgment notwithstanding the verdict. No assignment of error attacks the special verdict that the injury was suffered in interstate traffic. Therefore the recovery must be based upon the federal employers liability act, for plaintiff concedes that there was no violation of the federal safety appliance act, the door latch handle, the only instrumentality that gave way, causing plaintiff's fall, not being one of the appliances covered by the latter act. It seems to us that defendant in arguing for judgment overlooks the rule that an appellate court must permit the jury to adopt the view of the evidence most favorable to the party for whom the verdict is rendered. A party is not entitled to judgment notwithstanding the verdict unless the evidence is practically conclusive against the verdict. 3 Dunnell, Minn. Dig. (2 ed.) § 5082; Opperud v. Byram, 173 Minn. 378, 217 N. W. 379.

From the testimony adduced by plaintiff the jury could find that the end door of the caboose next to the locomotive did not open and shut readily because the floor bulged against the bottom of the door; that as plaintiff passed out of the door he grasped the handhold

along the right door jamb with his left hand and, standing on the eight-inch sill with his back to the locomotive, he took hold of the latch handle with his right hand to pull the door shut, when the handle unexpectedly gave way because insecurely fastened, causing him to fall backwards and lose his grasp on the handhold, with the disastrous result stated. The jury could also find that the handle and latch with one of the screws by which the handle had been attached were picked up soon after the accident at the place where he fell; and that the wood of the door where the handle was attached was decayed and unfit to hold the screws securely. There was no evidence from defendant contradicting plaintiff's that the handle came loose or that this happened because of the soft and rotten condition of the wood to which it was affixed, for evidently the car inspectors who examined the caboose immediately after the accident did not notice whether or not the door latch handle was gone, confining their examination wholly to the handholds and grabirons. And even the ones who the next day photographed the locomotive and the caboose, sides and ends failed to notice the absence of the latch handle; not even when the photograph of the end in question plainly disclosed its absence did they discover what the jury found to be the real cause of the accident. From the circumstances of the handle's parting from the door the jury had a basis for concluding that defendant had failed to use ordinary care in the inspection of this contrivance to make it reasonably safe for the use it was designed to be subjected to. Nor can it be held as a matter of law that plaintiff assumed the risk of injury by attempting to pass from the caboose to the locomotive, for he was not aware of the negligent attachment of the latch handle, and such negligence he was not required to anticipate. Defendant cites Perkins v. G. N. Ry. Co. 152 Minn. 226, 188 N. W. 564; Campbell v. Southern Pac. Co. 120 Or. 122, 250 P. 622; Kleimenhagen v. C. M. & St. P. Ry. Co. 65 Wis. 66, 26 N. W. 264. But it is to be noted that in each instance the instrumentality which gave way was either not covered by the safety appliance act, alleged to have been violated, or else was not used for the purpose or in the manner intended. Here the

handle was not used as a handhold to support the body in climbing up, but for closing the door, the very use for which it was placed on the door. The court rightly denied a directed verdict, and likewise judgment non obstante veredicto.

Is defendant entitled to a new trial for the errors assigned upon the admission and exclusion of testimony and the charge of the court? One Stahl was a witness for plaintiff, and defendant sought to discredit his testimony by showing that he had been discharged from its service because of a charge that he was assisting in pilfering goods carried. To rebut this plaintiff was permitted to introduce the commendatory certificate which defendant issued to him on his dismissal. There was no error in this ruling. Complaint is also made because another witness of plaintiff was not required on cross-examination to give the reasons for some change in his name. We do not think legitimate cross-examination of this witness was unduly curtailed by the ruling. It does not appear that the bad order tags which a witness testified he saw upon the caboose were placed there after the accident, so it cannot be held reversible error to refuse to strike that testimony. The exclusion of defendant's records, exhibits 4 and 36, can afford no ground for a new trial, for the evidence is conclusive that plaintiff's crew had charge of the locomotive and caboose No. 01456 when the injury occurred.

There was however one error which must be regarded as prejudicial to defendant. Plaintiff, recognizing the danger involved in passing from the caboose to the locomotive when the caboose is coupled to a locomotive moving at the rate of 10 to 15 miles per hour, testified it was the practice and custom so to pass in defendant's yards at Milwaukee. Defendant called a yardman, Campbell, of as much if not more experience than plaintiff, to contradict plaintiff's testimony in regard to the custom mentioned. Upon plaintiff's objection Campbell's testimony was excluded. It is true that defendant was permitted to contradict plaintiff's testimony by its witness Busch, who also gave his opinion that so to pass from caboose to locomotive was very dangerous. The excluded testimony bore directly upon the issue of contributory negligence. Had the

jury had the benefit of Campbell's testimony in addition to Busch's, that issue might have been determined in defendant's favor and the amount of recovery reduced proportionally. It may be claimed that the accident happened before plaintiff had actually started on the perilous attempt; that if the handle had not come out he might have changed his mind about crossing over to communicate with the engineer and might instead have mounted the ladder of the caboose and stopped the train with the airvalve or else signaled with whistle and lantern to stop so that the running orders could be imparted. But we think it was for the jury to say whether or not he had already started on a negligent course in which he met his injuries. A customary way of doing work may be a negligent way, but ordinarily a jury may consider the customary method people pursue in doing work as bearing upon the issue of negligence. We are of opinion that the learned trial court was in error when excluding the witness Campbell's testimony as to what he knew and had observed in regard to the practice plaintiff had testified to.

The error just referred to may account for the very large verdict, claimed to be so excessive as to indicate passion and prejudice on the part of the jury. The instructions of the court in reference to the items to be considered in fixing damages are also assigned as error contributing to the large verdict. There inheres the same vice condemned in Cox v. C. G. W. R. Co. 176 Minn. 437, 223 N. W. 675; Thompson v. Byram, 179 Minn. 67, 228 N. W. 546; Baird v. C. M. St. P. & P. R. Co. 179 Minn. 127, 228 N. W. 552. This quotation sufficiently illustrates the duplication of damages which it might lead the jury to award:

"In determining the amount of such damages, it is your duty to take into consideration the character, nature, extent and severity of such injuries; such disability as he has suffered and will hereafter suffer therefrom; such bodily and mental pain as he has suffered and will hereafter suffer therefrom; such humiliation, discomfort and inconvenience as he has suffered and hereafter will suffer in consequence of said injuries; you must take into account

and consideration the extent to which he has been incapacitated to work and earn money in consequence of such injuries; you should further take into consideration the amount of earnings or wages which plaintiff has lost from the time he was injured up to the present time, directly and proximately in consequence of such injuries, and the amount of such wages and earnings as it is reasonably certain from the evidence he will lose in the future in consequence of such injuries."

After another sentence regarding the degree of proof for the allowance of future damages, the court added:

"You may also consider the pain and humiliation because of disfigurement."

The result was a verdict larger than any which has so far been allowed to stand in this court for injuries of similar gravity. Plaintiff lost his leg, as stated; but it healed rapidly and without complications. Besides that he lost a bridge in his lower jaw, and the teeth in the upper jaw were so loosened that they had to be replaced by artificial ones. There are some scars on his body and face of no serious character. He claims to be affected with nervousness. For the exclusion of the testimony of the witness Campbell above referred to and the duplication of damages allowed by the quoted part of the charge, there should be a new trial.

. The order is affirmed in so far as it denies judgment, but in so far as it denies a new trial it is reversed and a new trial is granted.